**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GERRY DUANE BURNETT,<br><br>Defendant. | Criminal No. 12-0042 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The defendant, Gerry Duane Burnett, filed this *pro se* motion, pursuant to 28 U.S.C. § 2255, seeking a new trial and to set aside his conviction for unlawful possession with intent to distribute heroin and marijuana, and conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(i). Def.'s Mot. to Vacate, Set Aside or Correct Sentence ("Def.'s 2255 Mot.") at 1, ECF No. 295. As grounds for this relief, the defendant claims ineffective assistance of counsel and an alleged violation by the government of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), for failing to disclose the purported use of a particular surveillance tool, called a "Stingray" device. Def.'s 2255 Mot. at 1; Def.'s Motion for New Trial Pursuant to Rule 33 ("Def.'s 1st Mot."), ECF No. 288.[1] For the reasons below, the defendant's motion is denied.[2]

---

[1] The defendant's initial post-resentencing motion was styled as a "Motion for New Trial Pursuant to Rule 33," ECF No. 288, which, upon consideration of the government's Response, ECF No. 292, and after notice to the defendant, the Court construed as a motion under 28 U.S.C. § 2255, *see* Order and Notice, ECF No. 293. The defendant then filed the instant motion, supplementing his original *Brady* claim with his ineffective assistance claim. *See* Def.'s 2255 Mot. at 1. Both motions are considered in this Memorandum Opinion.

[2] The defendant requests a hearing on his motions, pursuant to 28 U.S.C. § 2255(b). Def.'s Reply at 9, ECF No. 304. Such a hearing is unnecessary when "'the trial record alone conclusively shows' that the defendant either is or is not entitled to relief." *United States v. Rashad*, 331 F.3d 908, 910 (D.C. Cir. 2003) (quoting *United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C. Cir. 1995)); *see also United States v. Taylor*, 139 F.3d 924, 932–33 (D.C. Cir.

I.  BACKGROUND

The relevant factual history of this case is summarized only to the extent necessary to evaluate the pending motion, as the facts of this case have been detailed extensively in previous decisions by this Court, *see* Mem. and Order Denying Second Mot. to Suppress Evidence Obtained by Warrantless GPS Monitoring (Mar. 21, 2013) ("Mem. and Order GPS Monitoring"), ECF No. 133; Mem. and Order Denying Mot. for J. of Acquittal (July 22, 2013), ECF No. 199, and by the D.C. Circuit, *United States v. Burnett*, 827 F.3d 1108 (D.C. Cir. 2016).

A.  THE GOVERNMENT'S INVESTIGATION

The defendant was charged in April 2012, along with two co-defendants, for "conspiring to distribute and possess with intent to distribute a kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841," as well as possession with intent to distribute heroin and marijuana. *Burnett*, 827 F.3d at 1113–14; *see* Second Superseding Indictment, ECF No. 23. A third co-defendant, Eugene McDuffie, separately pleaded guilty, pursuant to a cooperation agreement with the government, and testified at trial. *Burnett*, 827 F.3d at 1112, 1113 n.1. The drug trafficking conspiracy began in "the spring of 2011," *id.* at 1113, and the instant defendant joined in "August or September of 2011," *id.* at 1121—around the same time that "the Government began investigating . . . after a confidential source notified the Government that McDuffie was trafficking in drugs," *id.* at 1113. "Shortly after opening its investigation, the Government obtained warrants to track McDuffie's car and cell phone," *id.*, and "also obtained rental car records, telephone toll records, and text messages to establish links between the co-conspirators,

---

1998) ("[S]ome claims of ineffective assistance of counsel can be resolved on the basis of the trial transcripts and pleadings alone. . . . Summary disposition may also be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." (citing *Fennell*, 53 F.3d at 1303–04, and *United States v. Pinkney*, 543 F.2d 908, 914–17 (D.C. Cir. 1976))). "[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), and the defendant's request for a hearing is accordingly denied.

conducted visual surveillance, and analyzed recorded meetings and calls between McDuffie and the [confidential informant] . . . ." Gov't's Opp'n Def.'s 2255 Mot. ("Gov't's Opp'n") at 1–2, ECF No. 303.[3]

During the government's investigation, the confidential informant ("CI") engaged in three controlled buys with McDuffie, including one on September 16, 2011. Gov't's Opp'n, Ex. A, Aff. of Samuel Bonner, Special Agent, Drug Enforcement Agency ("DEA") (Feb. 27, 2012) ("Bonner Aff.") ¶ 6, ECF No. 303-1. Prior to the controlled buy on September 16, the CI met with McDuffie on September 15 to buy heroin, but McDuffie "stated he would have to speak to his [source of supply]." Gov't's Opp'n, Ex. C, DEA-6 (Sept. 28, 2011) ¶ 3, ECF No. 303-3. From recordings of conversations between the CI and McDuffie, the government learned that McDuffie "stored [heroin] with . . . his 'other man' who lived by the 'jail,'" and "needed approx[imately] 30 minutes to meet that same subject to obtain the heroin" for sale to the CI. *Id.* ¶ 5. Later that day, GPS tracking data showed that McDuffie's car "was stationary near 1707 D St[reet] SE, Washington, DC from approx[imately] 8:47–9:23 p.m.," and the DEA agent noted that "address is located approximately 2 blocks from the Washington, DC Correctional Facility." *Id.* ¶ 6. The government found that, "according to public records, Gerry BURNETT has resided at that address since 2005." *Id.* (capitalization in original). Further, "toll records for MCDUFFIE's telephone" showed that "his telephone was in contact with" a telephone number "subscribed to BURNETT" at 1707 D Street SE, several times on September 15. *Id.* (capitalization in original).

---

[3] The government began collecting GPS data from McDuffie's phone after obtaining a warrant on August 25, 2011, which surveillance was reauthorized by five subsequent warrants to continue the use of the "GPS locator information and real-time cell site data on McDuffie's cellular phone." Mem. and Order GPS Monitoring at 2.

The CI met McDuffie again the morning of September 16, and McDuffie left that meeting at "approx[imately] 11:00 a.m. According to toll records, MCDUFFIE made telephone calls to BURNETT at approx[imately] 10:59 a.m., 11:29 a.m. and 11:48 a.m. MCDUFFIE returned to meet and sell the heroin to the [CI] at approx[imately] 12:25 p.m." *Id.* ¶ 7 (capitalization in original).

Further investigation revealed that the defendant and McDuffie were "in frequent contact" and that McDuffie went to the defendant's residence at 1707 D Street SE "approximately once per week" during the investigation. Bonner Aff. ¶ 26. During a search of the defendant's home, pursuant to a search warrant, "agents recovered over one-quarter of a kilogram of marijuana, three digital scales, 34 grams of heroin, and cash." Gov't's Opp'n at 2.

**B.     TRIAL AND APPEAL**

Before trial, the parties attempted unsuccessfully to negotiate a plea agreement. *See* Status Hr'g Tr. (June 5, 2012), ECF No. 253 at 4 (defense counsel noting that "plea negotiations are ongoing"); *id.* at 10 (the Court noting that "[t]he purpose of the continuance and the exclusion of time as discussed during the status hearing is for defense counsel to continue to evaluate the discovery produced in the case, consult with their clients about a possible disposition in the case and collect other information that may be pertinent to negotiating a plea agreement with the Government."). The Court confirmed before trial that the defendant was aware of the plea offer and rejected it. Pretrial Conf. Rough Hr'g. Tr. (Mar. 22, 2013).[4] The jury trial of this case began with jury selection on April 15, 2013. Mem. and Order Denying Mot. for J. of Acquittal at 2.

---

[4] All citations to the March 22, 2013, hearing transcript cite to a rough draft of the transcript, since the court reporter has not made a final transcript available. When the final transcript is available, it will be posted on this case's docket. Discrepancies in page numbers between the rough and final transcripts may exist.

Twice before trial the defendant moved to suppress evidence from the search of his home. He first argued, unsuccessfully, that the warrant application lacked probable cause, *see* Def.'s First Mot. to Suppress, ECF No. 41; Def.'s Amended Mot. to Suppress, ECF No. 54; Minute Order (Nov. 30, 2012) (denying the motion), and then argued, unsuccessfully, that the use of GPS tracking information from McDuffie's phone while McDuffie was in the defendant's home violated defendant's Fourth Amendment rights, *see* Def.'s Second Mot. to Suppress, ECF No. 128; Mem. and Order GPS Monitoring (denying the motion).

During the trial, the defendant testified on his own behalf. Mem. and Order Denying Mot. for J. of Acquittal at 4. Prior to direct examination, the Court engaged in a colloquy with the defendant, asking whether he had "sufficient time to talk to [his attorney] about whether or not you want to exercise your right to testify at this trial" and whether he had "evaluated with [his attorney] the potential risks of testifying." Rough Trial Tr. (May 1, 2013) at 40.[5] The defendant answered these questions affirmatively. *Id.* During direct examination, the defendant's attorney asked whether he understood "that you are under oath," that if "anything that you say is false, it can lead to additional charges, perjury," and that the "criminal penalties associated with perjury . . . are severe." *Id.* at 46–47. The defendant, again, answered affirmatively. *Id.*

After the jury convicted the defendant, *see* Verdict Form, ECF No. 172, the defendant's Motion for Judgment of Acquittal, ECF No. 178, was denied, *see* Mem. and Order Denying Mot. for J. of Acquittal. On August 2, 2013, the defendant was sentenced to concurrent terms of 151 months' incarceration on each of the three counts on which he had been convicted. Judgment at

---

[5] All citations to the May 1, 2013, hearing transcript cite to a rough draft of the transcript, since the court reporter has not made a final transcript available. When the final transcript is available, it will be posted on this case's docket. Discrepancies in page numbers between the rough and final transcripts may exist.

1–3, ECF No. 225. The defendant then appealed, arguing: (1) "the search of his home by federal agents violated the Fourth Amendment," *Burnett*, 827 F.3d at 1117; (2) the Court erred in its calculation "of the total quantity of heroin attributable to the conspiracy," *id.* at 1119; and (3) that the Court "erred in basing his sentence on conduct that occurred before he joined the conspiracy," *id.* at 1120. The D.C. Circuit rejected the first two arguments, but ruled in the defendant's favor as to the third, and remanded for resentencing based on "685.7 grams of heroin attributable to" the defendant, rather than the 995.7 grams used to calculate his sentence. *Id.* at 1120–22.

Accounting for the reduced amount of heroin attributable to the defendant, his total offense level was recalculated as 28, which, given the applicable statutory mandatory minimum, produced a guideline range of 120 to 121 months' incarceration. Sentencing Tr. (Feb. 10, 2017) at 10, ECF No. 301; Gov't's Opp'n at 8. The defendant was then resentenced to concurrent terms of 120 months' imprisonment—the statutory mandatory minimum—on each of the three counts on which he had been convicted. Judgment at 1–3, ECF No. 286.

One month after his re-sentencing, the defendant filed the instant motion, raising for the first time arguments that the government violated its *Brady* obligations and that he received ineffective assistance of counsel. As explained below, these claims do not warrant the relief the defendant seeks.

## II. LEGAL STANDARD

A petitioner bringing a 28 U.S.C. §2255(a) motion bears the burden of establishing a denial of constitutional rights by a preponderance of evidence. *Daniels v. United States*, 532 U.S. 374, 381–82 (2001). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review," however, "the claim may be raised in habeas only if the defendant can

first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). If the defendant does not "profess[] actual innocence, 'he must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *see also United States v. Washington*, 373 F. App'x 80 (D.C. Cir. 2010) ("[Defendant's] attempt to show cause by arguing ineffective assistance of counsel is unavailing because that claim also requires him to show prejudice, in addition to deficient performance.").

The merits of an ineffective assistance of counsel claim under the Sixth Amendment are evaluated under the two-factor analysis set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to demonstrate:

> First . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Gooch*, 842 F.3d 1274, 1279 (D.C. Cir. 2016) (quoting *Strickland*, 466 U.S. at 687); *see also United States v. Murray*, No. 17-3006, 2018 WL 3625414, at *10 (D.C. Cir. July 31, 2018) (explaining the *Strickland* standard). Failure of either prong of the *Strickland* inquiry will preclude relief. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). The *Strickland* analysis applies to § 2255 proceedings. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005). Consistent with the defendant's burden to establish the right to relief under § 2255, "the burden to 'show that counsel's performance was deficient' rests

squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) (quoting *Strickland*, 466 U.S. at 687).

The first *Strickland* factor requires the defendant to "show that counsel's actions were not supported by a reasonable strategy . . . ." *Massaro v. United States*, 538 U.S. 500, 505 (2003); *United States v. Brisbane*, 729 F. Supp. 2d 99, 109 (D.D.C. 2010) (same). When engaging in this analysis, the Supreme Court has instructed that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland* 466 U.S. at 690); *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir 2014) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (quoting *Strickland*, 466 U.S. at 689)); *see also United States v. Mendez-Cruz*, 329 F.3d 885, 891 (D.C. Cir. 2003) ("Judicial scrutiny of counsel's performance must be highly deferential." (quoting *Strickland*, 466 U.S. at 689)).

The second *Strickland* factor requires the defendant to "show . . . that there is, at least, a reasonable probability that the result of the proceeding would have been different." *United States v. Winstead*, 890 F.3d 1082, 1089–90 (D.C. Cir. 2018). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013) (quoting *Strickland*, 466 U.S. at 694).

### III. DISCUSSION

The defendant's *Brady* and ineffective assistance claims are discussed *seriatim*.

#### A. DEFENDANT'S *BRADY* CLAIM IS PROCEDURALLY BARRED AND WITHOUT MERIT

The defendant speculates, without any record evidence, that the government used a so-called "stingray" device as part of its investigation, and that it then failed to disclose that

8

evidence to him. Def.'s 1st Mot. at 2.[6] This claim, raised for the first time after appeal, is procedurally barred because he "fail[ed] to raise it on direct review." *Pettigrew*, 346 F.3d at 1144. The defendant cannot show cause for this failure, because he "learned of the device called a cell site simulator" "during his appeal," Def.'s Reply at 2, ECF No. 304, and thus could have raised the claim then.

In any event, the defendant also cannot show prejudice. *See Pettigrew*, 346 F.3d at 1144 ("To establish 'actual prejudice'" the defendant must show that the error "worked to his *actual and substantial disadvantage*." (emphasis in original)). The basis for the defendant's claim is his belief a cell-site simulator must have been used, because he claims that his identity "could have not been ascertained otherwise." Def.'s 1st Mot. at 3. The defendant is mistaken.

As the government points out, the Bonner Affidavit and the DEA investigation report from September 28, 2011, show exactly how "agents learned defendant's identity by analyzing public records, McDuffie's GPS tracking data, and telephone records." Gov't's Opp'n at 19. Indeed, this Court, in considering pre-trial suppression motions, cited the various forms of evidence that led to the identification of McDuffie's co-conspirators, including the defendant here, stating that the "statements and actions of McDuffie . . . in combination with cellular telephone calling records, agents' visual surveillance, and GPS tracking of McDuffie's vehicle, point directly to Mr. Burnett and the use of his residence at 1707 D Street, S.E., for narcotics trafficking." Mem. and Order GPS Monitoring at 8–10. Even if a cell-site simulator (*i.e.*, stingray device) had been used, that fact would not have changed the Court's denial of the

---

[6] A cell-site simulator "device (often called a Stingray, the trademark of one brand) pretends to be a cell-phone access point and, by emitting an especially strong signal, induces nearby cell phones to connect and reveal their direction relative to the device." *United States v. Patrick*, 842 F.3d 540, 542 (7th Cir. 2016). The Department of Justice explains, "[l]aw enforcement agents can use cell-site simulators to . . . determine the unique identifiers of an unknown device by collecting limited signaling information from devices in the simulator user's vicinity." U.S. DEP'T OF JUST., DEP'T OF JUST. POLICY GUIDANCE: USE OF CELL-SITE SIMULATOR TECHNOLOGY at 1 (Sept. 3, 2015), https://www.justice.gov/opa/file/767321/download.

9

defendant's motion to suppress. *See id.* at 10 ("These facts, and the others set forth in the affidavit in support of the search warrant, clearly established probable cause justifying issuance of the warrant, even without use of the GPS tracking data from McDuffie's cellular telephone."). In other words, the defendant has not shown, and cannot show, any prejudice.

Moreover, the defendant's *Brady* claim fails even if it is considered without regard to his procedural default. A due process violation arising from the government's knowing suppression of evidence only entitles a defendant to relief when "three components" are met: "[(1)] The [suppressed] evidence . . . must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the [government], either willfully or inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017) (enumerating "three elements" to prove *Brady* violation, with "[t]hird, the movant must demonstrate prejudice"). "To satisfy the prejudice element, the evidence must be material." *Id.*; *see also Turner v. United States*, 137 S.Ct. 1885, 1893 (2017) (noting that, for claimed *Brady* violation, petitioners "are entitled to a new trial only if they 'establis[h] the prejudice necessary to satisfy the "materiality" inquiry'" (quoting *Strickler*, 527 U.S. at 282) (alteration in original)). Assuming *arguendo* that the government did use a stingray device, the defendant does not even suggest that the use of this device would have produced any exculpatory evidence. Nor was the defendant prejudiced, because, as already explained, evidence from the CI, public records, and GPS tracking data and telephone records from McDuffie were sufficient to establish probable cause for the search warrant executed at the defendant's home.

## B. DEFENDANT'S INEFFECTIVE ASSISTANCE CLAIMS ARE WITHOUT MERIT

The defendant claims ineffective assistance of counsel because his attorneys: (1) "were ineffective for failing to ask the Government how they came to know of Burnett's identity between (9/15 – 9/29) during the investigation," Def.'s 2255 Mot. at 1; (2) failed to "raise [certain] challenges in the motion to suppress" regarding "several discrepancies" the defendant alleges were in the warrant, *id.* at 2; (3) failed to take unidentified actions with regard to a plea agreement, *id.* at 2–3; and (4) failed to "object[] to the drug amount" at sentencing, *id.* at 3.[7] These claims fail because he shows no prejudice arising from any of his counsels' alleged errors. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

First, as the government notes, the defendant's claim that "all 3 of his attorneys were ineffective for failing to ask the Government how they came to know of Burnett's identity," Def.'s 2255 Mot. at 1; *see also* Def.'s Reply at 7–8, "essentially recycles his *Brady* claim," Gov't's Opp'n at 20. For the same reasons stated above, the defendant cannot show prejudice, because the government had sufficient evidence, set forth in the Bonner Affidavit, to demonstrate how the defendant's identity was discovered to establish probable cause to search his home.

Second, the defendant's argument that his attorneys failed to "raise . . . challenges in the motion to suppress" regarding "several discrepancies" in the warrant, Def.'s 2255 Mot. at 2; *see also* Def.'s Reply at 8 (claiming that defendant received only "a copy of the search warrant . . .

---

[7] The defendant initially raised an additional claim, that his attorney failed to inform him that he could "receive more time for perjury for taking the stand if he were found guilty," Def.'s 2255 Mot. at 3, but in his reply "concede[d]" that his two-level enhancement for obstruction of justice for untruthful testimony did not prejudice him because there was no effect on his mandatory minimum sentence, Def.'s Reply at 9.

11

absent of the inventory and property sheet"), does not demonstrate prejudice. In fact, the inventory listed on the search warrant return, *see* Search Warrant Return, No. 12-mj-164, ECF No. 4, is the same as the inventory attached as Exhibit C to the defendant's first motion to suppress, Def.'s First Mot. Suppress Physical Evidence, Ex. C, Arrest Report, ECF No. 41 at 55–58, so the defendant plainly had access to the information he now claims to have lacked. Moreover, while there is a discrepancy on the Search Warrant return—the return was signed by the executing officer on March 1, 2012, and filed on the electronic docket on March 9, 2012, but the return bears the handwritten date of "7/11/2012" for the date of execution—such discrepancy would not have merited suppression. *See United States v. Glover*, 681 F.3d 411, 418 (D.C. Cir. 2012) ("[R]eviewing courts may not exclude evidence 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984))); *see also United States v. Motz*, 936 F.2d 1021, 1025 (9th Cir. 1991) ("The agents executed a valid search. [Defendants] were not prejudiced by the agents' failure to perform the ministerial requirements of Rule 41(d). The district court was correct in refusing to suppress the evidence."). Accordingly, the defendant cannot show prejudice.

Third, the defendant's claim regarding "the plea agreement," Def.'s 2255 Mot. at 2, fails because he, again, does not show prejudice. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also United States v. Aguiar*, 894 F.3d 351, 363 (D.C. Cir. 2018) ("In the plea-offer context, [defendant] must show a 'reasonable probability' that he would have

12

accepted the plea offer if his attorney had performed adequately."). The fact of ongoing plea negotiations was discussed publicly on the record in the defendant's presence at several status hearings over the course of at least three months. *See* Gov't's Opp'n at 22 n.8. Then, before trial, the Court engaged in a colloquy with the defendant to confirm that he understood the terms of the plea offer and rejected them. *See* Pretrial Conf. Rough Hr'g. Tr. (Mar. 22, 2013). After the defendant's counsel explained that the defendant had "indicated to me that he was not interested in any plea offer and he also indicated that he had been aware of the plea offer as was written, he just hadn't saw it in writing and he has rejected the offer," the defendant affirmed to the Court that his counsel was correct. *Id.* Thus, the defendant was aware of plea discussions, and he was told before trial "that the Government was still offering 6 years." Def.'s 2255 Mot. at 2. The defendant does not explain how his attorney erred, and does not even claim—let alone "demonstrate a reasonable probability," *Frye*, 566 U.S. at 147—that he would have accepted a plea offer, and so he has failed to demonstrate prejudice.

The defendant's final claim is that his attorney "never objected to the drug amount" at sentencing. Def.'s 2255 Mot. at 3. The government contends that the defendant's counsel did, in fact, raise such an objection, noting that his counsel argued the defendant was "responsible [] only [for] 34 grams of heroin, the amount that was found in his residence, and no more." Gov't's Opp'n at 26; *see also* Final Presentence Investigation Report at 27, ECF No. 192 ("Defense counsel noted that based upon evidence presented at trial, the defense anticipates arguing that Mr. Burnett is responsible for 34 grams of heroin which is the amount found inside of 1707 D Street [SE] . . . ."). The defendant is correct, however, that the D.C. Circuit found his defense counsel "did not contemporaneously object" specifically to the inclusion of heroin from "before he joined the conspiracy." *Burnett*, 827 F.3d at 1121; *see* Def.'s Reply at 9.

13

Notwithstanding any defense counsel error on this point, that error was corrected on remand and resentencing. Accordingly, the defendant can show no prejudice.

### C. NO CERTIFICATE OF APPEALABILITY IS WARRANTED

If a district court "enters a final order adverse to the applicant," it "must issue or deny a certificate of appealability" ("COA") to the defendant. Fed. R. Crim. Pro. Gov. § 2255 Proceedings 11; *United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) ("[T]he district court should rule in the first instance on whether a COA should be issued." (citing Fed. R. App. P. 22(b)). A certificate of appealability is appropriate when the defendant shows "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the defendant is not entitled to a COA because "reasonable jurists" would not debate that the defendant failed to demonstrate prejudice from the alleged *Brady* violation and ineffective assistance of counsel.

### IV. CONCLUSION

For the foregoing reasons, the defendant's pending motions for a new trial and to set aside his conviction are **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

Date: August 1, 2018

_____
BERYL A. HOWELL
Chief Judge